UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

**LABORERS PENSION TRUST FUND --
DETROIT & VICINITY, et al.,**

        Plaintiff(s),        CASE NUMBER: 04-71588
                                  HONORABLE VICTORIA A. ROBERTS

v.

**CUSTOM POURED WALLS, INC**, a
corporation formed under the laws of
the State of Michigan,

        Defendant(s).
_____/

**ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. The Court **DENIES** Plaintiffs' Motion for Summary Judgment.

**II.    BACKGROUND**

This action is brought by six fringe benefits funds (collectively "the Funds" or "Plaintiffs")[1] that were established and administered pursuant to Section 302 of the Labor-Management Relations Act ("LMRA") of 1947, 29 U.S.C. §186, *et seq.,* and the

---

[1] Plaintiffs are: Laborers Pension Trust Fund -- Detroit & Vicinity; Laborers Vacation & Holiday Trust Fund -- Detroit & Vicinity; Laborers & Poured Concrete Workers Insurance Fund; Laborers Annuity Fund -- Detroit & Vicinity; Michigan Laborers Training Fund; and, Poured Concrete Wall Industry Steward Fund.

Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. §1001, *et seq.* Defendant Custom Poured Walls, Inc. ("Custom") is an employer in the building and construction industry.

The Laborers International Union of North America ("Laborers Union") entered into a collective bargaining agreement ("CBA"), covering the years 1996 through 1999, with the Poured Concrete Wall Association, Inc. In 1998, Custom agreed to be bound by the terms of the CBA, and subsequently adopted the agreements from 1999 through 2006. A Trust Agreement and its Amendments are incorporated into each CBA by reference. Under the CBA and Trust Agreement, Custom is obligated to make contributions for fringe benefits of employees represented by the Laborers Union, and those contributions are to be paid directly to Plaintiffs.

The contracts also allow Plaintiffs to periodically audit Custom's books and records to confirm the accuracy and timeliness of Custom's contributions. Through one such audit, Plaintiffs discovered that Custom accrued $3,122.51 in unpaid contributions from January 2001 through May 2003. Pursuant to the terms of the CBA and Trust Agreement, Plaintiffs assessed liquidated damages of $307.65 for the unpaid contributions. Plaintiffs also determined that Custom accrued $373,411.47 in late contributions from January 2001 through June 2003[2] and assessed liquidated damages of $10,029.36. In total, Plaintiffs demanded that Custom pay $13,459.52 for unpaid contributions and liquidated damages. Custom paid $3,122.51 for the unpaid contributions, but refused to pay the balance for liquidated damages. Therefore,

---

[2]Presumably, these contributions have been paid by Defendant.

Plaintiffs brought this action. Plaintiffs move for summary judgment; they contend that they have established their entitlement to liquidated damages as a matter of law. In response, Defendant argues that the liquidated damages provision is an unenforceable penalty as a matter of law, and further that Plaintiffs are not entitled to interest, costs and attorney fees.

### III.  STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for

discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact.  Rule 56(e); *Cox*, 53 F.3d at 150.  The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint.  *Copeland*, 57 F.3d at 479.  "The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party."  *Id; See also Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

**IV.    ANALYSIS**

Each CBA contains liquidated damage provisions which state in relevant part:

> B.    Contributions to the Fund are due monthly by the fifteenth (15th) day of the month following the month in which the hours of work being contributed on were performed.  **Failure to make timely contributions prior to the end of such period will result in a cost-for-late-posting fee of ten percent (10%) monthly of the amount due and which is delinquent**. . . .
>
> If an Employer fails to make contributions . . . within twenty (20) days after the date required by this paragraph, the Union shall have the right to take whatever steps are necessary to secure compliance with this Article, any provision of this Agreement to the contrary notwithstanding; **and the Employer shall be liable for all reasonable costs for**

> **collecting the payments due together with any reasonable attorney fees and such reasonable liquidated damages which may be assessed by the Trustees.**
>
> C. The aforementioned ten percent (10%) fee shall help defray the cost of late posting, makeup of delinquent notices and other administrative costs required by late contributions.

Art. V(B)-(C)(emphasis added). The Trust Agreement, likewise, states:

> **The Trustees may impose a uniform schedule of assessments, as liquidated damages, for late payment of employer contributions which shall be established by the Trustees upon their consideration of the expenses incurred, opportunities lost and all other costs incident, arising from or related to the late payment of employer contributions.** The Trustees may also collect interest with respect to contributions paid after the date on which they were due. The Trustees shall also have the power to demand, collect and receive recover [sic] all attorneys' fees and costs of collection incurred by the Trust Fund in enforcing the obligations regarding the payment of contributions. . . .

Trust Agreement, Art. IV, Sec. 5 (as amended May 1, 2003)(emphasis added).

Defendant does not dispute that certain of its contributions were untimely. Nor does Defendant dispute the alleged amounts that were owed. Also, Defendant does not dispute that each CBA permits Plaintiffs to assess liquidated damages for untimely contributions. Defendant only challenges the enforceability of the liquidated damages provision and the reasonableness of the amount assessed.

Plaintiffs acknowledge that they cannot pursue liquidated damages under the statutory provisions of ERISA,[3] because the required contributions were paid before a judgment was entered against Defendant. *See In re Michigan Carpenters Council Health and Welfare Fund*, 933 F.2d 376, 388 (6th Cir. 1991). However, a plaintiff can

---

[3] 29 U.S.C. §1132(g)(2).

5

still pursue damages if the parties' contract includes a liquidated damages provision. *Id* at 390.

It is undisputed that the contracts at issue in this case contain liquidated damages provisions. Defendant argues, however, that the provisions in the contract are not enforceable unless Plaintiffs prove that the provisions do not constitute a penalty under common law. This, Defendant says, Plaintiffs failed to do. For the reasons stated below, the Court agrees.

"[A] penalty is a sum which is disproportionate to anticipated damages. . . ." *United Order of American Bricklayers and Stone Masons Union,* 519 F.2d 331, 333 (7th Cir. 1975). The *Michigan Carpenters* Court held that trial courts must carefully scrutinize a purported contractual liquidated damages provision to ensure that it does not constitute a penalty. 933 F.2d at 388. Such a provision is void as a penalty unless it meets two conditions of enforceability:

> 1) that the harm caused by a breach is very difficult or impossible to estimate; and
>
> 2) that the amount fixed is a reasonable forecast of just compensation for the harm caused.

*Idaho Plumbers and Pipefitters Health and Welfare Fund v United Mechanical Contractors, Inc.,* 875 F.2d 212, 217 (9th Cir. 1989). To determine whether the second prong is satisfied, a court must consider the parties' intentions; that is, the parties "must make a good faith attempt to set an amount equivalent to the damages they anticipate." *Id.*

Plaintiffs offer little in support of either prong of the test. For the first prong, Plaintiffs simply rely upon the fact that the parties agreed to a liquidated damages

provision, which Plaintiffs contend signifies their agreement that damages are difficult to estimate. However, there is no basis for Plaintiffs' apparent presumption that the first requirement is satisfied whenever the parties stipulated to a liquidated damages provision. Such reasoning is unsound because the two-prong test was developed to assess contractual liquidated damages provisions which were necessarily agreed upon. Therefore, it would render the first prong of the test a nullity if the parties' stipulation to the contract language was alone sufficient. A greater showing is necessary. However, a plaintiff's burden is minimal. For instance, in *Bricklayers Pension Trust Fund v Rosati, Inc.*, 23 Fed. Appx. 360 (6th Cir. 2001)(unpub. op.), it was deemed sufficient when plaintiffs offered the testimony of employees who administered the fund about the difficulty of measuring the harm and why. In this case, Plaintiffs did not make even this minimal showing.

For the second prong, Plaintiffs again simply rely on the fact that Defendant stipulated to the liquidated damages provision and its stated purpose -- to "defray the cost of late posting, makeup of delinquent notices and other administrative costs required by late contributions." CBA, Art. V(C). However, Plaintiff provided no information to show that the amounts assessed are a reasonable forecast of the estimated harm caused. As with the first prong, Plaintiffs' burden is not onerous. For instance, in *Rosati* the plaintiffs simply provided evidence that they considered actual costs incurred over a period of years to create a liquidated damages provision. 23 Fed. Appx. at *2. Similarly, although the provision at issue was ultimately rejected as a penalty, the plaintiffs in *Board of Trustees v Udovuch*, 771 F.Supp. 1044,1050 (N.D. C.A. 1991), set forth the particular types of harms they sought to cover and submitted

7

documentation such as the minutes of meetings and memoranda, *along with* provisions of the contract, to support their assertion.

Here, the harms Plaintiffs sought to cover are stated generally in the CBA. But, no supporting documents or other evidence is provided to show how Plaintiffs determined that the formula used to calculate damages is a reasonable estimate of expected damages. Consequently, the Court has no independent means of assessing whether the amount of liquidated damages sought is proportionate to Plaintiffs' reasonably anticipated damages.

In light of the foregoing, the Court finds that Plaintiffs have not established as a matter of law that the liquidated damages provisions in its contracts are enforceable. Consequently, it is not necessary for the Court to determine whether the amount of liquidated damages requested is reasonable or Plaintiffs' request for interest, fees and costs. Plaintiffs' Motion for Summary Judgment is denied.

Although, in response to Plaintiffs' motion, Defendant argued that the liquidated damages provisions are unenforceable as a matter of law, Defendant did not move for summary judgment. It simply urged the Court to determine that there is a question of fact concerning the reasonableness under the circumstances of the amount Plaintiffs claim in liquidated damages.

**V.   CONCLUSION**

The Court **DENIES** Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: May 19, 2005

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 19, 2005.

s/Linda Vertriest
Deputy Clerk

---